0126

Kenneth R. RYCROFT, Appellant, v. Clifford F. GADDY, Jr., Rene J. Tanguay and The Citizens and Southern National Bank of South Carolina, Respondents.

(314 S. E. (2d) 39)

Court of Appeals

*David D. Armstrong*, Greenville, *for appellant.*

*James Watson* and *Michael J. Giese*, of *Leatherwood, Walker, Todd & Mann*, Greenville, *for respondent Gaddy.*

*William Douglas Gray*, of *Watkins, Vandiver, Kirven, Gable & Gray*, Anderson, *for respondent Citizens and Southern National Bank of South Carolina.*

*Rene J. Tanguay, pro se.*

Heard Jan. 23, 1984.

Decided March 12, 1984.

SHAW, Judge;

This is an action for abuse of process, invasion of privacy, and negligence. The trial judge granted the respondents' motion for involuntary non-suit with prejudice. We affirm.

The instant case arose out of an earlier lawsuit between the appellant-Rycroft and the respondent-Tanguay. Rycroft and Tanguay were equal shareholders in a corporation when Tycroft sued for dissolution of the corporation. Tanguay retained the respondent-Gaddy as counsel and counter-claimed alleging that Rycroft had defrauded the corporation.

The day before the commencement of the trial, Tanguay and Gaddy learned that Rycroft had used C & S Bank as a depository for certain corporate checks. Rycroft was served with a subpoena *duces tecum* directing him to bring his records to the hearing. He failed to comply with the subpoena contending he did not have sufficient time to do so. Prior to the conclusion of the hearing, Gaddy moved to continue the lawsuit so that he could obtain Rycroft's personal banking records from C & S. This motion was denied by the Master-in-Equity.

The Master issued his written report to the Circuit Court on June 29, 1979. Even though neither party excepted to the Master's report, the action was not dismissed until Circuit Judge Eppes issued his order, dated September 6, 1979, confirming and adopting the Master's report.

Rycroft complied with the Master's report by sending two certified checks to Tanguay. After these checks had been received, Gaddy had two subpoenae *duces tecum* issued by the Greenville County Clerk of Court, one dated July 23, 1979, and the other August 1, 1979. Both subpoenae directed C & S Bank to produce the records of Rycroft's checking account. C & S complied with the subpoenae and turned the records over to Gaddy who gave them to Tanguay.

In February of 1980, Gaddy served Rycroft with notice of motion to reopen the judgment. The motion was granted by Special Circuit Judge Sparks who found that Rycroft had committed an extrinsic fraud upon the court. This order was later reversed on appeal. *See Rycroft v. Tanguay*, 279 S. C. 76, 302 S. E. (2d) 327 (1983). Rycroft then initiated this action against Tanguay, Gaddy, and C & S Bank claiming that C & S was negligent in producing his bank records and that the production of those records constituted an abuse of process and an invasion of privacy.

In deciding on a motion for a nonsuit, the trial judge must consider the evidence in the light most favorable to the party resisting the motion. If more than one reasonable inference can be drawn from the evidence, the judge must submit the case to the jury. *Dunsil v. Jones Chevrolet*, 268 S. C. 291, 233 S. E. (2d) 101 (1977).

Rycroft claims that C & S was negligent in failing to look beyond the face of a valid subpoena (the validity of which Rycroft admits) to determine if litigation was pending and if the records were requested for a valid purpose. The subpoenae *duces tecum* were proper in their form, meet the existing legal procedures in South Carolina (see Section 14-17-260), and clearly indicated that a viable legal action was pending between Rycroft and Gaddy. Since the subpoenae were valid on their face, the bank had no duty to inquire into the circumstances behind the subpoenae as a bank cannot refuse to give information concerning an account when questioned in response to a lawful subpoena. *Peterson v. Idaho First National Bank*, 83 Idaho 578, 367 P. (2d) 284 (1961) (dictum); *In Re* Addonizio, 53 N. J. 107, 248 A. (2d) 531 (1968).

Rycroft next claims that the production of his bank records constituted an invasion of his right to privacy. This tort, recognized as actionable in South Carolina, has been defined as

> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Meetze v. Associated Press*, 230 S. C. 330, 95 S. E. (2d) 606 (1956); *Todd v. S. C. Farm Bureau Mut. Ins.*, 276 S. C. 284, 278 S. E. (2d) 607 (1981).

As we read this definition, three different causes of action can arise under the tort of invasion of the right of privacy: (1) wrongful appropriation of personality; (2) publicizing of private affairs of no legitimate public concern; and (3) wrongful intrusion into private affairs. A necessary element of each different claim is damages. Under the facts of this case, the wrongful appropriation of personality is clearly not at issue.

With regard to C & S, there can be no wrongful intrusion as the bank already had Rycroft's records. Rycroft is claiming that the bank had no right to reveal his private records to a member of the public. However, the subpoenae were proper on their face and the bank had no choice but to comply. Further, the subpoenae were issued to

produce documents that were intended to be used in pending litigation. Communications in judicial proceedings are abso-. lutely privileged and are immune from an action for an invasion of privacy. *Wolfe v. Arroyo*, 543 S. W. (2d) 11 (Tex. Civ. App. 1976).

With regard to Tanguay and Gaddy, Rycroft claims both wrongful intrusion and publicizing of private affairs. We will deal with the publicity charge first.

Rycroft claims that his bank records were obtained by Gaddy and given to Tanguay who then showed the records to a Mr. Charles Rollins. The testimony at the trial revealed that while Rollins saw the stack of checks and knew that they were Rycroft's checks from C & S Bank, that was the extent of Rollins' knowledge.

Under a cause of action for the "publicizing of one's ■ private affairs with which the *public* has no legitimate concern" (emphasis added), an essential element of recovery is a showing of a *public dislosure* of private facts. *Beard v. Akzona, Inc.*, 517 F. Supp. 128 (E.D. Tenn. 1981). The disclosure of private facts must be a public disclosure, and not a private one; there must be, in other words, publicity. *Harrison v. Humble Oil*, 264 F. Supp. 89 (D.S.C. 1967). It is publicity, as opposed to publication, that gives rise to a cause of action for invasion of privacy. *Tureen v. Equifax, Inc.*, 571 F. (2d) 411 (8th Cir. 1978); *Todd v. S. C. Farm Bureau, supra.* Communication to a single individual or to a small group of people, absent a breach of contract, trust, or other confidential relationship, will not give rise to liability. *Harrison v. Humble Oil, supra; Beard v. Akzona, Inc., supra; Thureen v. Equifax, Inc., supra; Peacock v. Retail Credit Co.*, 302 F. Supp. 418 (N. D. Ga. 1969), aff'd 429 F. (2d) 31 (5th Cir. 1970). Gaddy's delivery of the checks to Tanguay and Tanguay's showing of the stack of checks to Rollins does not qualify as publicity or as a public disclosure. The publicizing charge against Gaddy and Tanguay therefore fails to state a cause of action.

That leaves only the wrongful intrusion charge. When ■ a plaintiff bases an action for invasion of privacy on "intrusion" alone, bringing forth no evidence of public disclosure, it is incumbent upon him to show a blatant and shocking disregard of his rights, and serious mental or phys-

ical injury or humiliation to himself resulting therefrom. *Shorter v. Retail Credit Co.*, 251 F. Supp. 329 (D.S.C. 1966).

Here, Gaddy obtained the bank records in connection with pending litigation. His sole motives were to properly represent his client and to prevent the perpetration of a fraud upon the court. Gaddy accomplished his goals without the use of rudeness, coercion, or extortion. There was no fraud or deception practiced on Rycroft. The fact that the bank did not give notice of the subpoenae to Rycroft is a matter between him and the bank. Regardless, the circumstances fail to show a "blatant and shocking disregard" of Rycroft's rights. This is especially true when Rycroft admitted at the trial that he would have been willing to allow Tanguay to have the records and that Tanguay had a record of every deposit they made in C & S. No wrongful intrusion cause of action has been stated against Tanguay and Gaddy.

Finally, Rycroft sets forth a claim based on abuse of process against all three respondents. The essential elements of abuse of process are: first, an ulterior purpose and second, a wilful act in the use of process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process is required. *Huggins v. Winn-Dixie*, 249 S. C. 206, 153 S. E. (2d) 693 (1967). The focus in an abuse of process action is on the improper use of process after it has been issued. *Scott v. McCain*, 275 S. C. 599, 274 S. E. (2d) 299 (1981).

No cause of action for abuse of process lies against C & S as the bank caused no process to issue against Rycroft; rather, it merely responded to the subpoenae caused to be issued by Gaddy on behalf of Tanguay. Rycroft has also failed to make out a valid abuse of process claim against Gaddy and Tanguay. Lacking is the first and essential element of an ulterior purpose. Rycroft's bank records were subpoenaed for an entirely legitimate purpose—to be used as evidence by Gaddy in the prosecution of his client's action. The subpoenae were not used as a form of coercion to obtain a collateral advantage or as a form of extortion. There is no liability under this tort when the process has been carried to its authorized conclusion, even though with bad intentions. *Huggins, supra; Scott v. McCain, supra; see also Cisson v.*

*Pickens Savings & Loan Association,* 258 S. C. 37, 186 S. E. (2d) 822 (1972).

Accordingly, the judgment below is

Affirmed.

BELL and CURETON, JJ., concur.