## 1734

Monica Lynn SIERRA, Respondent v. Jim SKELTON and Court Ridge Association of Resident Owners, Inc., Appellants.

(414 S.E. (2d) 169)

Court of Appeals

*Edwin B. Parkinson, Jr., Haynsworth, Marion, McKay & Guerard,* Greenville, *for appellants.*

*H.W. Pat Paschal, Jr., Miller & Paschal,* Greenville, *for respondent.*

Heard Oct. 16, 1991; Filed Dec. 9, 1991.

Refiled Feb. 10, 1992; Reh. Den. Feb. 25, 1992.

CURETON, Judge:

This appeal involves an action for abuse of process and defamation. The jury returned a general verdict awarding the respondent, Monica Sierra, actual and punitive damages. The appellants, Jim Skelton and Court Ridge Association of Resident Owners Inc., appeal on several grounds. We affirm for the reasons stated in Part V of this opinion.

I.

The case was based upon the issuance of an arrest warrant and subsequent arrest of Monica Sierra on charges of burglary and grand larceny. Sierra was a student at Furman University. She lived with several roommates in a rented condominium at Court Ridge Condominiums. During December of 1987 Sierra and her roommates hosted a party at their condominium. A table from another condominium unit at Court Ridge was brought into Sierra's apartment for the party. It is disputed whether Sierra had anything to do with the removal of the table from the other condominium. In any

event, the table was discovered to be missing from the other condominium by Jim Skelton, property manager for the regime at Court Ridge. He made this discovery while showing the other unit to a prospective tenant. This individual was also a student at Furman. While showing the condo to the student, Skelton also discovered a coffee table and several chairs in the unit were damaged.

The other student was a friend of Sierra. He visited her while at the condominium complex and saw the missing table in her unit. He advised her to return it. During a later telephone conversation with Skelton, the student revealed he knew where the missing table was located. The student did not want to get Sierra into trouble so he identified the general location of her condo to Skelton but testified he did not give Sierra's name to Skelton. The table was returned by someone during late December. However, Skelton continued to pursue the matter of the table and damaged furniture.

On December 22, 1987, Skelton made a complaint to the Greenville County Sheriff's Office. The complaint was taken by Officer Elliot. Officer Elliot worked for Court Ridge part-time as a security officer. The incident report stated Skelton, the complainant, had received information that the suspect, Sierra, had entered Unit B-102 at Court Ridge and had removed certain items including a kitchen table, kitchen chairs, and a coffee table. The report also stated the suspect had returned the items to the unit but the chairs and coffee table were damaged beyond repair. The report further noted "the victim is unsure of prosecution pending restitution of the damaged items."

On January 13, 1988, Officer Elliott filed a supplemental report stating the "victim and suspect have not made an agreement on damages at this time. The victim request [sic] the case status remain active for 5 more days." Officer Elliot had made efforts after the initial report to contact Sierra at her apartment and had left his card asking her to contact him. One of her roommates apparently called her about the visit by Officer Elliot. Sierra was in Florida on Christmas vacation but had already contacted a Florida attorney about the matter. The attorney had been contacted because Skelton had entered Sierra's condo during late December looking for the missing table. Sierra was at home when Skelton came looking for the

table. She told Skelton the table had been borrowed for a party and had been returned. She offered to pay rent for it but denied taking or damaging the other items. The Florida attorney appears to have had some communication or attempted communication with Officer Elliot on behalf of Sierra but no resolution of the matter occurred.

Sierra was arrested on January 29, 1988, on charges of burglary and grand larceny. Two days earlier Skelton had signed a victim/witness statement indicating Sierra had entered the condo and removed a table and other furnishings. There is a factual dispute between Skelton and Officer Elliot as to who actually pursued the warrant at that time. Sierra contacted a local attorney and was released on a recognizance bond. Through the efforts of the attorney the solicitor of Greenville County dismissed the warrant against Sierra. This civil action was subsequently filed.

## II.

The appellants, Skelton and Court Ridge, assert the trial court erred in failing to grant them a directed verdict on the abuse of process cause of action. We find no error.

The South Carolina Rules of Civil Procedure requires a party to state the specific grounds for a directed verdict motion. Rule 50(a), SCRCP. These same grounds form the basis of the motion for judgment notwithstanding the verdict. Rule 50(b), SCRCP. The motion for directed verdict made by the appellants was as follows:

> Your Honor, for the record I'd make a motion for a directed verdict as to the second cause of action, which I think would be characterized as abuse of process, but I gather from a comment you made that you would deny that motion . . . I would not then argue that any further.

This motion fails to state any grounds for the directed verdict. On appeal the appellants assert the trial court erred in not directing the verdict because Sierra did not demonstrate a willful act in the use of process which occurred after the warrant had been issued. Whether this is a correct interpretation of the law of abuse of process or not, the appellants failed to procedurally preserve their position at trial and may not assert it now for the first time on appeal.

*Austin v. Independent Life and Accident Ins. Co.*, 296 S.C. 156, 370 S.E. (2d) 918 (Ct. App. 1988) (issue not raised in directed verdict motion at trial will not be determined for the first time on appeal).

Although not necessary to determine this issue, we ■ disagree with appellants' substantive assertion that there must be some action by a party after process has been issued in order for there to be a cause of action for abuse of process. The leading case on abuse of process in South Carolina is *Huggins v. Winn-Dixie Greenville Inc.*, 249 S.C. 206, 153 S.E. (2d) 693 (1967). The *Huggins* case is somewhat analogous to the facts of this case. In *Huggins*, there was a reasonable inference a store manager utilized the criminal process for the ulterior purpose of coercing a customer to pay ten dollars for merchandise the manager felt the customer had previously taken from the store. In response to an argument that the arrest of the customer did not constitute abuse of process because the actions of the store manager took place before process was issued, the court held the arrest and charge for the two packages of meat were "tainted throughout with the ulterior and improper purpose of coercing the respondent to pay for merchandise that the store manager 'felt' or suspected he had previously taken." *Id.* at 212, 153 S.E. (2d) at 696. *Huggins* has been consistently cited with approval by the appellate courts in this state. *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E. (2d) 711 (1988); *Johnson v. Painter*, 279 S.C. 390, 307 S.E. (2d) 860 (1983); *Scott v. McCain*, 275 S.C. 599, 274 S.E. (2d) 299 (1981); *Russell v. Risher*, 272 S.C. 182, 249 S.E. (2d) 908 (1978); *Cisson v. Pickens Savings and Loan Ass'n*, 258 S.C. 37, 186 S.E. (2d) 822 (1972); *Rycroft v. Gaddy*, 281 S.C. 119, 314 S.E. (2d) 39 (Ct. App. 1984).

The appellants rely upon language in two cases to support their contention. In *Scott v. McCain* and *Rycroft v. Gaddy*, there is language that the focus in the abuse of process action is on the improper use of process after it has been issued.[1] In reviewing these cases in conjunction with prior and subsequent opinions of the appellate courts of this state, we

---

[1] *Scott v. McCain*, 275 S.C. 599, 600, 274 S.E. (2d) 299, 300 (1981); *Rycroft v. Gaddy*, 281 S.C. 119, 125, 314 S.E. (2d) 39, 43 (Ct. App. 1984).

do not conclude that the basic precept expressed in *Huggins* has been modified. Rather, we agree with the analysis of a recognized treatise that cases which indicate an improper act committed before process is issued is insufficient to support an action for abuse of process stand only for the narrower proposition that there must be an overt act and bad purpose alone is insufficient. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 898 (5th ed. 1984). Such an analysis is in accord with *Scott v. McCain* and *Rycroft v. Gaddy*. In *Scott,* the Supreme Court held there was no indication of wayward acts seeking collateral advantage.[2] In *Rycroft,* the court of appeals found no use of the subpoena as a form of coercion to obtain a collateral advantage.[3] We do not find the *Scott* and *Rycroft* cases to have substantively modified *Huggins* so that only acts occurring after process has been issued may be considered in an abuse of process claim.

## III.

The appellants also assert the trial court erred in not granting them a new trial because the court did not allow them to amend their answer to allege a qualified privilege and did not charge qualified privilege to the jury. These objections are addressed to the defamation cause of action.

In their answer the appellants alleged a general denial of the allegations of the complaint. They did not plead any affirmative defenses. During the post-trial motions the issue of qualified privilege arose when counsel for the appellants was arguing for a directed verdict on the defamation cause of action. Counsel for Sierra pointed out the answer did not assert this as an affirmative defense. The parties then engaged in a discussion about the case and whether qualified privilege was an affirmative defense. At one point the trial judge commented he was of the opinion it was an affirmative defense and stated "I ain't going to grant anybody privilege of amending their answer." However, he immediately indicated he had not made a final decision on the matter. Several pages later in the transcript he stated he was

[2] *Scott,* 275 S.C. at 602, 274 S.E. (2d) at 301.
[3] *Rycroft,* 281 S.C. at 125, 314 S.E. (2d) at 44.

going to hold that qualified privilege was an affirmative defense and must be alleged.

We have searched the transcript and have not found a point at which the appellants actually made a motion to amend their answer to assert the defense of qualified privilege. Although the court made a comment about not allowing an amendment, this appears to be an "off the cuff" comment and was not made in response to a motion to amend by the appellants. We do not construe the comment to mean the trial judge would never allow a party to amend his pleadings upon proper motion because such a position would clearly be judicial error. Since we find no motion by the appellants to amend their pleadings we find no error in the trial court's actions. We note qualified privilege in a defamation case is an affirmative defense and should be alleged. Rule 8(c), SCRCP; *O'Neal v. Carolina Farm Supply of Johnston,* 279 S.C. 490, 309 S.E. (2d) 776 (Ct. App. 1983) (affirmative defense conditionally admits the allegations of the complaint but asserts new matter to bar the action); *Rivers v. Florence Printing Co.,* 141 S.C. 364, 139 S.E. 781 (1927) (qualified privilege is an affirmative defense). Since qualified privilege was not affirmatively alleged in the answer and there was no motion to amend, it was not an issue in the case. There was no error by the trial court in not charging the jury on the matter.

## IV.

The appellants assert the trial court erred in failing to grant them a new trial because of error in the jury charge on abuse of process. Although we find the trial court improperly charged the jury, we nevertheless affirm for the reasons stated in Part V of this opinion.

The trial judge charged the jury on abuse of process as follows:

One of these causes of action is what I call abuse of process. The law is very, very clear that the criminal court is not to be used for the purpose of collecting debts. You are not to institute criminal action for the purpose of collecting civil debt.

Now, the fact that in the court after a person is convicted

or after he pleads guilty or some such thing as that, as a part of probation restitution is done, then that is legitimate, but if the—for instance, I give you this example. If, Mr. Foreman, you caught me stealing $10,000 from you, and I say my Lord, I can't afford a thing like that. Tell you what I'll do, I'll give you $15,000 extra if you just keep your big mouth shut. Well, if you take my money, we both are supposed to be in jail, because we have compounded a felony. It is in and of itself an illegal act.

It doesn't make any difference in the abuse of process case if the young lady stole half of the stuff or stole the whole condominium for that matter. If the warrant was taken for the purpose of collecting a civil debt, it was an abuse of process. I mean that's all there is to it, if that was the purpose of the warrant.

The appellants objected to the charge based upon (1) use by the court of a hypothetical and (2) comment by the court upon the facts suggesting the court's opinion about the case. The appellants did not object to the failure of the trial judge to charge the elements of the cause of action. *See Huggins v. Winn-Dixie Greenville Inc.*, 249 S.C. 206, 153 S.E. (2d) 693 (1967) (elements of abuse of process are an ulterior purpose and a willful act in the use of process not proper in the regular conduct of the proceeding). They now raise the issue on appeal. Our rules of civil procedure provide that a party may not sign as error the giving or failure to give an instruction unless he objects before the jury retires to consider its verdict by distinctly stating the matter to which he objects and the grounds for his objection. Rule 51, SCRCP; *Southern Ry. Co. v. Coltex, Inc.*, 285 S.C. 213, 329 S.E. (2d) 736 (1985) (right to have the law declared is waived by silence in the face of an omission from the charge). While we do not approve of the failure of the trial court to charge the basic elements of the cause of action, the matter was not preserved at trial and cannot be raised for the first time on appeal.

Concerning the objections specifically raised to the charge, we find the trial court committed error by using the hypothetical example and thereby inferentially expressing its opinion on the facts. A court may use a

hypothetical statement in an effort to clarify the applicable law without expressing or intimating any opinion as to the weight of the evidence. *Harrelson v. Reaves*, 219 S.C. 394, 65 S.E. (2d) 478 (1951). The court utilized a hypothetical example concerning the criminal act of compounding a felony. The hypothetical example was irrelevant and potentially misleading to the jury because the appellants had not been charged with any criminal act. We also fail to see how the hypothetical demonstrating the elements of compounding a felony clarifies the law regarding the elements of abuse of process. Counsel for the appellants objected that the court's reference to compounding a felony and jail also indicated to the jury the court's feelings about the actions of the appellants in the case. In response the court stated "[t]hat's exactly what I think, they should have gone to jail . . . and I don't make—and I don't make any bones about the way I feel about it." This comment was not made in the presence of the jury but it is of import when the jury charge is viewed in its entirety. A trial judge should not intimate to the jury any opinion on the facts of a case, whether intentionally or unintentionally. *China v. City of Sumter*, 51 S.C. 453, 29 S.E. 206 (1898). Considering the charge on abuse of process as a whole, we find the trial judge inferentially communicated his opinion on the facts to the jury by the use of an improper hypothetical involving criminal activity.

## V.

Given our conclusion in Part IV, we would be inclined to reverse and remand the case for a new trial.

However, we are constrained to affirm the trial court because of the principle of law known as the "two issue rule." Under this principle, where a jury returns a general verdict involving two or more issues and its verdict is supported on at least one issue the verdict will not be reversed on appeal. *Anderson v. West*, 270 S.C. 184, 241 S.E. (2d) 551 (1978). The South Carolina Supreme Court had consistently adhered to this principle. See *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 287 S.C. 190, 336 S.E. (2d) 472 (1985). Our court has also recognized its validity and specifically applied it to a situation where it was argued that the trial court erred in the jury instructions. *Piedmont Aviation, Inc. v. Quinn*, 294 S.C.

502, 366 S.E. (2d) 31 (Ct. App. 1988) (where case is submitted to jury on two causes of action and jury returns a general verdict, error by judge in his instructions on second theory is of no consequence where verdict is supportable under first theory).

The case was submitted to the jury on the issues of abuse of process and defamation. The jury returned a general verdict. The appellants have not raised the sufficiency of the evidence to support the defamation claim as an issue on appeal. Therefore, the "two issue rule" applies.

The decision of the trial court is

Affirmed.

BELL, J., and LITTLEJOHN, Acting Associate Judge, concur.[2] *Scott*, 275 S.C. at 602, 274 S.E. (2d) at 301.

