567 S.E.2d 251

**FOOD LION, INC., Appellant,**

v.

**UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, Respondent.**

No. 3533.

Court of Appeals of South Carolina.

Heard Oct. 11, 2000.

Decided July 8, 2002.

Charles Porter, Jane W. Trinkley and Robert L. Widener, all of McNair Law Firm, of Columbia; Donald A. Harper, of the Harper Law Firm, of Greenville; Richard L. Wyatt, Jr., Larry E. Tanenbaum and Thomas P. McLish, all of Akin, Gump, Strauss, Hauer & Feld, of Washington, D.C., for appellant.

Arnold S. Goodstein, of Summerville; Alice F. Paylor, of Rosen, Rosen & Hagood and Armand Derfner, both of Charleston; and Robert F. Muse, of Stein, Mitchell & Mezines; Robert M. Weinberg and Andrew D. Roth, both of Bredhoff & Kaiser, all of Washington, D.C., for respondent.

SHULER, J.

Food Lion, Inc. appeals the trial court's dismissal of its action for abuse of process against the United Food & Commercial Workers International Union. We affirm.

## FACTS/PROCEDURAL HISTORY

On February 12, 1993, Food Lion, Inc. filed a complaint in circuit court alleging the United Food & Commercial Workers International Union committed the common-law tort of abuse of process by funding and directing a lawsuit against it as part of a "corporate campaign" strategy used to inflict economic harm on certain disfavored food retailers.[1] The Union removed the action to federal court on March 16. Food Lion filed a motion for remand and the Union responded with a motion to dismiss. On July 21 the federal court issued an order denying Food Lion's motion and granting the motion to dismiss, finding the National Labor Relations Act preempted the state law cause of action for abuse of process.

Food Lion filed a motion to reconsider and therein sought to amend its complaint. The court permitted the amendment and vacated the dismissal on January 22, 1994. On February 3, the Union filed a second motion to dismiss for failure to state a cause of action under South Carolina law, which the court denied on June 24. The Union then filed a motion to reconsider the failure to dismiss and a subsequent motion for partial summary judgment. The federal court denied both motions on October 4, 1995.

Following reassignment of the case, another judge sua sponte questioned the original remand ruling and asked the

---

1. In the suit, several former Food Lion employees complained of wrongful termination and failure to give notice of their right to continue health care coverage. After nearly a decade of litigation, the federal district court found in favor of the defendants. *See Bryant v. Food Lion, Inc.*, 100 F.Supp.2d 346 (D.S.C.2000), *aff'd*, 8 Fed. Appx. 194 (4th Cir.2001), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). Although the Union was not a party to the *Bryant* lawsuit, liability for the abuse of process tort generally "extends to all who knowingly participate, aid, or abet in the abuse." *Broadmoor Apartments of Charleston v. Horwitz*, 306 S.C. 482, 486, 413 S.E.2d 9, 11 (1991). Similarly, "[t]hose who advise or consent to the [abusive] acts, or subsequently ratify them, are liable as joint tortfeasors." *Id.*

parties to re-argue the issue of subject matter jurisdiction. On July 24, 1998, the federal court, finding it lacked jurisdiction, remanded the case to the South Carolina circuit court. Thereafter, on October 27, 1998, the Union moved to dismiss the action pursuant to Rule 12(b)(6), SCRCP, and a hearing was held January 12, 1999. By order dated March 11, 1999, the court dismissed the amended complaint for failure to state a valid cause of action for abuse of process and, alternatively, because the action was preempted by federal law. Food Lion filed a motion to alter or amend the judgment, which the court denied on April 20, 1999. This appeal followed.[2]

## LAW/ANALYSIS

### Standard of Review

A trial court's ruling on a 12(b)(6) motion to dismiss for failure to state facts constituting a cause of action must be based solely upon the allegations set forth on the face of the complaint. *See State Bd. of Med. Exam'rs v. Fenwick Hall, Inc.*, 300 S.C. 274, 387 S.E.2d 458 (1990). In deciding the motion, the court must view the allegations in the light most favorable to the plaintiff, "with every doubt resolved in his behalf." *Gentry v. Yonce*, 337 S.C. 1, 5, 522 S.E.2d 137, 139 (1999). The trial court, therefore, should refuse a 12(b)(6) motion if the "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *Id.* (quoting *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995)).

### Discussion

The abuse of process tort provides a remedy for one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure. *See Huggins v. Winn–Dixie Greenville, Inc.*, 249 S.C. 206, 210, 153 S.E.2d 693, 695 (1967) ("[A]n abuse of process is the employment of legal process for some purpose other than that which it was

---

2. Although Food Lion lists ten separate "issues" in its "Statement of Issues on Appeal," we find the appeal essentially presents only two questions for review, i.e., whether the trial court erred by dismissing Food Lion's abuse of process claim pursuant to Rule 12(b)(6), SCRCP and/or by finding the claim preempted by federal law.

intended by the law to effect—the improper use of a regularly issued process."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121 at 897 (5th ed. 1984) ("[T]he gist of the tort is ... misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish."). The purpose itself, though ulterior, need not be illegitimate; rather, the abuse occurs when the purpose is accomplished by using the process in a manner in which it was not intended to be used. *See* Fowler W. Harper et al., *The Law of Torts* § 4.9 (3d ed.1996).

■ To sustain a claim for abuse of process, it is axiomatic that "the judicial process must in some manner be involved." Keeton, *supra*, § 121 at 898; *see Kirchner v. Greene*, 294 Ill.App.3d 672, 229 Ill.Dec. 171, 691 N.E.2d 107 (Ill.Ct.App. 1998) (holding that where no court process is involved there can be no abuse of process); 72 C.J.S. *Process* § 106 at 697 (1987) ("[I]f the process is not used at all, no action can lie for its abuse."). Although no South Carolina case has defined the term "process" in the context of the tort, we agree with Food Lion that the trial court erroneously circumscribed its meaning by giving it the technical construction found in *Royal Exchange Assurance of London v. Bennettsville & C.R. Co.*, 95 S.C. 375, 79 S.E. 104 (1913). In our view, "process," as it pertains to the abuse of process tort, embraces the full range of activities and procedures attendant to litigation. *See Hart v. O'Malley*, 436 Pa.Super. 151, 647 A.2d 542, 551 (Pa.Super.Ct.1994) ("The word 'process' as used in the tort of abuse of process has been interpreted broadly and encompasses the entire range of procedures incident to the litigation process.") (citation omitted); *Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876, 880 (Ariz.App.1982) (" '[P]rocess' as used in the tort ... is not restricted to the [traditionally] narrow sense of that term."); 72 C.J.S. § 106 at 694 ("For purposes of the tort, the word 'process' may encompass a range of court procedures incident to the litigation."); Harper, *supra*, § 4.9 at 4:104, n. 52 ("That a tort action, loosely called 'abuse of process,' requires the use of the word *process* as that word is technically defined in other contexts is no more self-evident than that a tort action loosely called 'false imprisonment' should require a 'prison.' ").

 A plaintiff alleging abuse of process in South Carolina must assert two essential elements: 1) an "ulterior purpose," and 2) a "willful act in the use of the process not proper in the conduct of the proceeding." *Hainer v. Am. Med. Int'l, Inc.,* 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997); *see LaMotte v. Punch Line of Columbia, Inc.,* 296 S.C. 66, 370 S.E.2d 711 (1988). "An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process." *First Union Mortgage Corp. v. Thomas,* 317 S.C. 63, 74, 451 S.E.2d 907, 914 (Ct.App.1994); *see Davis v. Epting,* 317 S.C. 315, 454 S.E.2d 325 (Ct.App.1994) (finding no ulterior purpose where the record presented no evidence the process was used to gain anything other than a right to access disputed property); *Rycroft v. Gaddy,* 281 S.C. 119, 125, 314 S.E.2d 39, 44 (Ct.App.1984) (holding no ulterior purpose was shown where defendants' use of subpoena to obtain bank records was for the "entirely legitimate purpose" of gathering evidence").

 As to the second, or "willful act" element, our supreme court has stated that "[s]ome definite act ... not authorized by the process or aimed at an object not legitimate in the use of the process is required." *Hainer,* 328 S.C. at 136, 492 S.E.2d at 107 (quoting *Huggins,* 249 S.C. at 209, 153 S.E.2d at 694); *see Rycroft,* 281 S.C. at 125, 314 S.E.2d at 43. Thus, the element comprises three components: 1) a "willful" or overt act 2) "in the use of the process" 3) that is improper because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective.[3] *Id.*

---

3. Contrary to Food Lion's argument, the improper act must relate to the judicial process. *See Cisson v. Pickens Sav. & Loan Ass'n,* 258 S.C. 37, 45, 186 S.E.2d 822, 826 (1972) ("[I]t is the malicious misuse or perversion of the process for an end not lawfully warranted by it that constitutes the tort known as abuse of process.") (citation omitted); *Bell Lines, Inc. v. Strickland,* 254 S.C. 148, 150, 173 S.E.2d 788, 788 (1970) (reversing the trial court's failure to sustain demurrer in part because "[n]o process was involved in any act done by plaintiff prior to the commencement of the action"). This is self-evident in that the language used to describe the element clearly refers to a "willful act *in the use of the process* not proper in the conduct of the proceeding." *Hainer,* 328 S.C. at 136, 492 S.E.2d at 107 (emphasis added). Indeed, proof of the "willful act" element demonstrates the improper use or "abuse" of the process. Although Food Lion contends our prior case law indicates the "willful act" and the "process" may exist independent

Food Lion indisputably alleged the first element of the tort by stating in its amended complaint that the Union "generated, funded, pursued and directed" the *Bryant* lawsuit for the "improper ulterior purpose of furthering the objectives of its corporate campaign." *See Hainer,* 328 S.C. at 136, 492 S.E.2d at 107 (noting the improper purpose usually is "to obtain a collateral advantage[ ] not properly involved in the proceeding itself") (quoting *Huggins,* 249 S.C. at 209, 153 S.E.2d at 694). As to the second element, Food Lion alleged the Union committed the following "willful acts":

 a. Filing the Complaint alleging a class action in the *Bryant* case for collateral purposes....

 b. Amending the Complaint in the *Bryant* case to add widely diverse additional named plaintiffs as class representatives for collateral purposes....

 c. Taking formal and informal discovery in the *Bryant* case, including depositions, interrogatories, and interviews, for collateral purposes....

 d. Taking depositions of persons [the Union] claimed as its clients in the *Bryant* case for collateral purposes....

---

of one another, we believe these cases stand only for the proposition that the willful act requirement is not limited to those abusive acts occuring *after* process has issued, but includes coercive or extortionate acts that *cause* process to issue in the first instance. *See, e.g., Huggins,* 249 S.C. at 212, 153 S.E.2d at 696 (holding the evidence sufficiently established the defendant abused the process by initiating criminal proceedings for the unintended purpose of extorting money it felt was due); *Sierra v. Skelton,* 307 S.C. 217, 222, 414 S.E.2d 169, 172 (Ct.App. 1991) (rejecting the argument that the focus in an abuse of process action is solely on the improper use of process after it has been issued); *Rycroft,* 281 S.C. at 125, 314 S.E.2d at 44 (finding no cause of action for abuse of process against defendant C & S Bank, because "the bank caused no process to issue against Rycroft"). For example, a careful reading of *Huggins* reveals the willful act supporting the abuse of process claim was not merely the store manager's demand that Huggins pay $10 for items allegedly taken previously; rather, it included the manager's directive to call the police, which resulted in the employment of the criminal process for something other than its intended purpose (the punishment of shoplifters). As the court stated: "Appellant cannot divorce itself from responsibility for the proceedings that resulted from the store manager's actions ... [as the ensuing criminal proceedings] were tainted throughout with the ulterior and improper purpose of coercing [Huggins] to pay for merchandise that the store manager 'felt' or suspected he had previously taken." *Huggins,* 249 S.C. at 212, 153 S.E.2d at 696.

e. Filing a motion to release from a Confidentiality Order the depositions [the Union] had taken of persons it claimed as its own clients in the *Bryant* case for collateral purposes....

f. Non-privileged publication of various allegations in pleadings filed by [the Union] in the *Bryant* case ... for collateral purposes....

We agree with the trial court, albeit for different reasons, that these acts *as described* are facially insufficient to allege the second element of the tort.[4]

Food Lion correctly observes that an abuse of process action may lie if a party prosecutes an "entire lawsuit" for collateral purposes.[5] *See* 1 Am.Jur.2d *Abuse of Process* § 11 at 420 (1994) ("[I]f the suit is brought not to recover on the cause of action stated in the complaint, but to accomplish a purpose for which the process was not designed, there is an abuse of process."). To this end, Food Lion's amended complaint states the Union employed "all of the process attendant to the *Bryant* case for purposes neither proper in the regular conduct of the *Bryant* lawsuit nor contemplated in the regular pursuit of its claims." The complaint's fatal flaw, however, is that Food Lion did not state facts sufficient to allege the third component of the "willful act" element—that is, in what manner the willful acts enumerated are improper. *See Stiles v. Onorato,* 318 S.C. 297, 300, 457 S.E.2d 601, 603 (1995) (affirming dismissal of third-party complaint for civil conspiracy

---

4. Although we acknowledge the trial court misconstrued Food Lion's amended complaint as asserting several causes of action for abuse of process rather than a single cause of action, we do not believe the court's evaluation of "each willful act separately, rather than as a broader pattern of conduct, masked the abusive nature" of the Union's behavior. In our view, whether the complaint is viewed as alleging one cause of action or six, Food Lion's allegation of an "ulterior purpose" still must be accompanied by a separate allegation of a "willful act in the use of the process not proper in the conduct of the proceeding." *Hainer,* 328 S.C. at 136, 492 S.E.2d at 107.

5. To the extent the Union argues abuse of process does not apply to the perversion of an entire lawsuit because any "abuse" could be cured by other remedies available to the court (i.e., sanctions), it misconstrues the purpose of the tort. An abuse of process action is not designed to compel compliance with court procedures or to deter future misconduct. Rather, the tort is intended to compensate a party for harm resulting from another's misuse of the legal system.

against plaintiff's attorney under 12(b)(6), SCRCP, where complaint failed to allege in what manner attorney acted outside his professional capacity). In other words, although properly alleging an act involving the process of the court, Food Lion failed to assert how the process was perverted or abused.

Food Lion's argument is premised on its belief that alleging the Union undertook the acts "for collateral purposes" sufficiently alleges the improper nature of the acts. We disagree. An allegation of an ulterior purpose or "bad motive," standing alone, is insufficient to assert a claim for abuse of process. *Hainer*, 328 S.C. at 136, 492 S.E.2d at 107 (explaining that no liability for the tort exists "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions"); *see First Union*, 317 S.C. at 75, 451 S.E.2d at 914–15 ("Because First Union simply carried the attachment process to its authorized conclusion, its actions as a matter of law do not constitute abuse of process."); Keeton, *supra*, § 121 at 897 ("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.").

Furthermore, although an ulterior purpose may be inferred from an improper willful act,[6] "the inference is not reversible and it is not possible to infer [improper] acts from the existence of an improper motive alone." *Keeton, supra*, § 121 at 899; *see* 72 C.J.S. § 107 at 696 ("Misapplication [of the process] will not be inferred from a wrongful purpose."). Hence, to sustain a claim for the tort, a party must allege facts sufficient to show not only that the lawsuit was brought for an ulterior purpose, i.e., for collateral reasons, but that willful acts were taken through which the process was misapplied or abused. *See Huggins*, 249 S.C. at 214, 153 S.E.2d at 697 ("The abuse, the perversion, of the process ... is the foundation of the cause of action...."); *Kirchner*, 229 Ill.Dec. 171, 691 N.E.2d at 116–17 ("The mere use of the legal process ... does not constitute abuse of process. 'Some act must be alleged whereby there has been a misuse or perversion of the

---

**6.** *See, e.g., First Union*, 317 S.C. at 74, 451 S.E.2d at 914 (stating an ulterior purpose is shown when a party uses the process to gain an illegitimate objective).

process of the court.' ") (citations omitted). To hold otherwise would vitiate the requirement of having to allege both elements of the tort—an "ulterior purpose" and an improper "willful act"—because a bald allegation that various acts were undertaken for collateral purposes would, in effect, be simply alleging an ulterior purpose.

The distinction between the two requirements is evident in the language of the Restatement of Torts: "One who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682 (1977) (emphasis added). As noted in the Restatement comment, "[t]he significance of ['primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Restatement (Second) of Torts § 682 cmt. b. at 475 (1977). Accordingly, liability exists not because a party merely seeks to gain a collateral advantage by using some legal process, but because the collateral objective was its sole or paramount reason for acting. *See id.;* Harper, *supra,* § 4.9 at 4:84–85 ("The process must be used 'primarily' to accomplish the ulterior end."); *Scozari v. Barone,* 546 So.2d 750, 751 (Fla.Dist.Ct.App. 1989) ("For the cause of action to exist, there must be a use of the process for an *immediate* purpose other than that for which it was designed. There is no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or *concurrent* motive of spite or ulterior purpose.") (emphasis added); *Wong v. Panis,* 7 Haw.App. 414, 772 P.2d 695, 700 (Haw.Ct.App.1989) ("Liability for abuse of process is imposed when the putative tortfeasor uses legal process 'primarily' for an ulterior motive."). It therefore follows that when a claim for abuse of process is predicated on an alleged act "aimed at an object not legitimate in the use of the process," the ulterior purpose allegation must be accompanied by an allegation that the process was misused by the undertaking of the alleged act, not for the purpose for which it was intended but for the primary purpose of achieving a collateral aim.

Here, Food Lion's amended complaint alleged only that the Union committed various acts—initiating and amending the *Bryant* lawsuit, taking discovery, filing motions, etc.—for collateral purposes. As discussed above, a party who simply pursues a lawsuit with a collateral purpose in mind has done nothing improper. Thus, even given a liberal construction, the "willful acts" as delineated and described by Food Lion were, without more, proper uses of the process. *See Meidinger v. Koniag, Inc.*, 31 P.3d 77, 86 (Alaska 2001) (dismissing a counterclaim alleging the pursuit of damages and injunctive relief as "overt acts" because the allegations were simply "examples of actions taken in the regular course of litigation").

Moreover, nowhere in the complaint did Food Lion claim the Union did not use the *Bryant* lawsuit for its stated purpose, i.e., to redress the termination and health care grievances of several former Food Lion employees. As a result, the amended complaint failed to assert any facts sufficient to show the acts undertaken by the Union in the *Bryant* proceeding were aimed not at its purported, and therefore proper, purpose of remedying alleged wrongs, but towards a primary purpose of achieving a collateral objective.[7] We therefore find Food Lion did not adequately allege the second element of the tort.[8] *See Mozzochi v. Beck*, 204 Conn. 490, 529 A.2d 171, 174 (Conn.1987) ("[Existing case law demonstrates that there is no bright line that clearly distinguishes between the ends ordinarily associated with litigation and the ulterior purpose that the tort of abuse of process is intended

7. Although we conclude no "magic words" are required (e.g., "primarily," "solely," "paramount" etc.), the complaint clearly must allege a party abused the process by not utilizing it for its intended purpose.

8. Food Lion admits as much in the reply brief, stating its complaint alleged "the Union did not invoke court procedures 'solely for the purpose of litigating its contentions with respect to the issues raised by [the *Bryant*] complaint,' but rather that it invoked those procedures for collateral purposes, and then engaged in willful acts intended to further those purposes." Although Food Lion also declares in its primary brief that the complaint alleged variously that "none of the Union's acts described ... was aimed at an objective related to the prosecution of the lawsuit" and that "the Union's purpose in pursuing the *Bryant* lawsuit was not to vindicate any legitimate grievance over employee benefits, but rather was to use the lawsuit as a vehicle for causing Food Lion financial harm," these assertions clearly do not appear in the amended complaint contained in the record on appeal.

to sanction. Much turns on the specificity of the pleadings. . . . ] Courts have held [general] complaints to be legally insufficient because they do not allege conduct showing the use of process to accomplish a purpose for which it was not designed. . . . So general an allegation of abuse does not satisfy the requirement of showing the use of legal process '*primarily* to accomplish a purpose for which it is not designed . . . .' ") (citations omitted); *Hart,* 647 A.2d at 552 ("[The complaint fails to address an essential element of the tort of abuse of process, i.e., that the process was used *primarily* for a purpose for which the process was not designed. It is not enough that the process employed was used with a *collateral* purpose in mind. . . . ] [A]ppellants' complaint [must] factually set forth that the continuance was not used for the purpose for which continuances are intended.") (internal citations omitted) (emphasis added); *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 379 (Tex.App.1989) (holding pleadings insufficient to state a cause of action for abuse of process where plaintiffs merely averred "Defendants improperly used the process to intimidate Plaintiffs, to obtain publicity and to increase Christmas sales of [Louis Vuitton] products, to decrease the sales of Defendants, to threaten Defendants with criminal prosecution, and to falsely accuse Defendants of a crime").

A complaint which neglects to allege a perversion or misuse of the process by omitting facts necessary to show an *improper* willful act in the use of the process has not stated a cause of action for abuse of process and fails as a matter of law. *See LaMotte,* 296 S.C. at 71, 370 S.E.2d at 713–14 (finding plaintiffs failed to assert a cause of action for abuse of process when they did not allege defendants "engaged in 'a willful act in the use of the process not proper under regular conduct of the proceedings'") (citation omitted); *Scott v. McCain,* 275 S.C. 599, 600–02, 274 S.E.2d 299, 300–01 (1981) (holding defendant's counterclaim alleging plaintiffs filed lawsuits to deprive him "of protected speech and associational rights and to punish and retaliate against him for the past exercise of such rights" did not state a cause of action because it failed to allege "*wayward* acts have taken place whereby collateral advantage has been sought") (emphasis added); *see also Rosen v. Tesoro Petroleum Corp.,* 399 Pa.Super. 226, 582 A.2d 27,

33 (Pa.Super.Ct.1990) ("We find that appellants have failed to state a claim for abuse of process, as the allegations in their complaint amount to no more than a charge for the initiation of litigation for a wrongful purpose, and do not charge appellees with any 'perversion' of properly issued process."). As Food Lion's amended complaint did not allege the "willful act" element of the abuse of process tort with sufficient specificity, the trial court did not err in dismissing the action.[9]

**AFFIRMED.**

HOWARD, J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, J. (dissenting).

Because I believe the majority opinion would require more facts to be pled than are necessary to survive a motion to dismiss, I respectfully dissent.

The test to be utilized by both the trial and appellate court in considering a motion to dismiss pursuant to Rule 12(b)(6), SCRCP is straightforward:

[I]n deciding a motion to dismiss pursuant to 12(b)(6), SCRCP, the trial court should consider only the allegations set forth on the face of the plaintiff's complaint and a 12(b)(6) motion should not be granted if "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." The question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. Further, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action.

*Gentry v. Yonce,* 337 S.C. 1, 5, 522 S.E.2d 137, 139 (1999) (citations omitted); *see also Watts v. Metro Sec. Agency,* 346 S.C. 235, 238, 550 S.E.2d 869, 870 (Ct.App.2001). "All well-pleaded factual allegations are deemed admitted for purposes of considering a motion for judgment on the pleadings."

---

**9.** Because we hold Food Lion failed to state a cause of action entitling it to relief on any abuse of process theory, we need not address the trial court's alternative ruling that the case was preempted by federal law.

*Fields v. The Melrose Ltd. P'ship*, 312 S.C. 102, 104, 439 S.E.2d 283, 284 (Ct.App.1993). "[P]leadings in a case should be construed liberally so that substantial justice is done between the parties. Further, a judgment on the pleadings is considered to be a drastic procedure by our courts." *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991) (citations omitted); *see also Justice v. The Pantry*, 330 S.C. 37, 42, 496 S.E.2d 871, 874 (Ct.App.1998), *aff'd as modified*, 335 S.C. 572, 518 S.E.2d 40 (1999).

Under the rules of this state, only ultimate facts need be pled, not all facts. At the pleadings stage, a litigant is not required to submit the evidence necessary to prove its case. "[U]nder our current pleading rules only ultimate facts are required to be stated in pleadings. Ultimate facts are those which the evidence upon trial will prove, and not the evidence which will be required to prove those facts." *Brown v. Inv. Mgmt. & Research, Inc.*, 323 S.C. 395, 400 n. 3, 475 S.E.2d 754, 756 n. 3 (1996).

> Rule 8, SCRCP, mandates that a pleading contain "ultimate facts" rather than "evidentiary facts" to state a cause of action. "Ultimate facts fall somewhere between the verbosity of 'evidentiary facts' and the sparsity of 'legal conclusions.' "

*Watts* at 240, 550 S.E.2d at 871 (citation omitted).

I believe the trial court erred in construing each act as a separate claim or cause of action. Appellant argues, correctly, I believe, that they are all factual allegations in support of a single claim of abuse of process in the context of a single lawsuit. Unlike the majority, I believe it matters whether the allegations are construed separately as independent claims or all together as the factual allegations which evidence would later be needed to prove. This matters greatly in weighing the sufficiency of the pleadings to determine if it survives a Rule 12(b)(6) motion.

According to Prosser, abuse of process includes a proper form of legal procedure, which would include discovery, that is perverted to accomplish an ulterior purpose. "Abuse of process differs from [the tort of] malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying

process justified in itself for an end other than that which it was designed to accomplish." *Prosser & Keeton on Torts* 897 (5th ed.1984).

> To cause process to issue without justification is an essential element of malicious prosecution, but not of abuse of process. In the latter, the issuance of the process may be justified in itself[;] it is the malicious misuse or perversion of the process for an end not lawfully warranted by it that constitutes the tort known as abuse of process.

*Huggins v. Winn–Dixie Greenville, Inc.,* 249 S.C. 206, 209, 153 S.E.2d 693, 695 (1967) (citations omitted).

The majority opinion would require not just an allegation of a willful act, but inclusion in the pleadings of the facts which make the willful act improper. Initially, it is opined that "the complaint's fatal flaw . . . is that Food Lion did not state facts sufficient to allege the third component of the 'willful act' element—that is, in what manner the willful acts enumerated are improper. . . . In other words, although properly alleging an act involving the process of the court, Food Lion failed to assert how the process was perverted or abused."

Additionally, the majority states:

> to sustain a claim for the tort, a party must allege facts sufficient to show not only that the lawsuit was brought for an ulterior purpose, i.e. for collateral reasons, but that willful acts were taken through which the process was misapplied or abused. [Citations omitted.] To hold otherwise would vitiate the requirement of having to allege both elements of the tort—an "ulterior purpose" and an improper "willful act"—because a bald allegation that various acts were undertaken for collateral purposes would, in effect, be simply alleging an ulterior purpose.

To state that "bald allegations of various acts were undertaken for collateral purposes," while acknowledging that willful acts were alleged, unnecessarily belittles the detailed factual allegations of a perversion of process contained in the complaint.

The majority places great emphasis on the fact that Food Lion does not allege the lawsuit was used *primarily* for an ulterior purpose, while disclaiming in a footnote that any "magic words" are required to state a cause of action. In citing similar language, our supreme court has declined to

place such emphasis on the single word "primarily." *See Hainer v. Am. Med. Int'l*, 328 S.C. 128, 146, 492 S.E.2d 103, 112 (1997) (Toal, J. dissenting). Thus, while undue emphasis could be placed on the Restatement's use of "primarily," that is not the law in South Carolina.

In *Hainer*, our supreme court (4–1, Toal, J. dissenting) affirmed this court's reversal of the jury verdict and grant of directed verdict on the basis that the evidence was insufficient to demonstrate an improper willful act, though they found it "may be susceptible of an inference of an ulterior purpose." In dissent, Justice Toal marshaled "persuasive circumstantial evidence" from the record of willful acts. She concluded the majority's acceptance of an "overt act" as necessary to a claim "appears for the first time in South Carolina jurisprudence in the 1992 Court of Appeals opinion *Sierra v. Skelton* . . . . [and] was not a requirement in any of this Court's abuse of process decisions." I concur in Justice Toal's observation that *Huggins* and prior South Carolina jurisprudence on abuse of process, including *Broadmoor*, require a "flexible approach." "If we approach the tort of abuse of process only in a hyper-technical manner, then we vitiate the purpose for which the cause of action exists." *Hainer* at 144, 492 S.E.2d at 111–12 (Toal, J. dissenting).

In *Broadmoor*, our supreme court found sufficient evidence from which the jury could infer that the corporation and its president willfully abused the process by filing a lis pendens for the ulterior purpose of preventing a sale to third parties in hopes of obtaining financial backing to purchase the property at an advantageous price. *Broadmoor Apts. of Charleston v. Horwitz*, 306 S.C. 482, 413 S.E.2d 9 (1991). The factual allegations in the pleadings in *Broadmoor* were nowhere near as detailed and extensive as they are in this case.

To craft as stringent a test as has the majority here raises the bar at the pleading stage to an insurmountable height. Utilizing this standard, none of the prior South Carolina cases that have found a valid claim for abuse of process would have survived a Rule 12(b)(6) motion. We need not decide whether Food Lion will ultimately succeed, only that it survives a 12(b)(6) assault. Thus, I would reverse the trial court.

Because I would reverse the dismissal of Food Lion's abuse of process claim, it becomes necessary to address whether the state common law cause of action is pre-empted by federal law. Food Lion argues the trial judge erred in its alternate holding that federal law, particularly the sanctioning power inherent in the FRCP preempted this action. I agree.

The Federal Rules of Civil Procedure (FRCP) do not preempt the state common law tort, as is clearly evidenced by the language in the Rules Enabling Act (REA) which provides that the FRCP "shall not abridge, enlarge, or modify any substantive rights." 28 U.S.C. § 2072(b). "A federal statute preempts state action ... only if the clear and manifest intent of Congress in passing the federal statute was 'to occupy the field to the exclusion of the State.'" *Medical Park OB/GYN v. Ragin,* 321 S.C. 139, 143, 467 S.E.2d 261, 263 (Ct.App.1996). There is no indication that Congress had a "clear and manifest" intent to preempt this field to the exclusion of a state common law action for abuse of process.

While sanctions under the FRCP are intended to deter abusive conduct, tort law is intended, at least in large part, to compensate the victims of abuse. *See* Rule 37(a)(4), FRCP, advisory committee notes (1970 amendments) (purpose of sanctions for abuse of discovery is to deter the abuse). The tort is not aimed at procedural control of lawsuits, as the rules are, but at remedying abuses. The goal and focus of each are very different. Thus, I conclude that this abuse of process tort action is not preempted by federal law.

For both of the above reasons, I respectfully dissent and would reverse and remand.