THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
R. Carlisle Roddey, Respondent,
v.
NationsWaste, Inc., and James Thomas Funderburk,
Jr.,Defendants,/of whom NationsWaste, Inc. is, Appellant.
 
 
 

Appeal From Chester County
Kenneth G. Goode, Circuit Court Judge

Unpublished Opinion No. 2005-UP-472
Heard April 4, 2005  Filed July 28, 2005

AFFIRMED IN PART AND REVERSED IN PART

 
 
 
Evans Taylor Barnette, L. Susan Foxworth, and McCutchen Blanton Johnson, all of Columbia, for Appellant.
Joel W. Collins and Eric G. Fosmire, both of Columbia, for Respondent.
 
 
 

PER CURIAM:  This appeal arises from jury verdicts against NationsWaste, Inc. on R. Carlisle Roddeys claims for abuse of process, civil conspiracy, and unfair trade practices act violations.  We affirm in part and reverse in part.
FACTS
The facts of this case were set into motion in 1995 when the countys landfill permit expired and the State ordered the landfill closed.  The county was required by law to develop a plan for the disposal of its solid waste before it could close the landfill.  Roddey served as Chester County Manager and Supervisor at this time.  The county entered into negotiations with NationsWaste, whereby NationsWaste would acquire the landfill and a large tract of adjoining land to build a new regional landfill, which would meet the requirements of State law.  Although a final agreement had not been approved, on May 6, 1996, the county council passed an ordinance authorizing the sale and lease of the landfill pursuant to the final agreement and directing the County Supervisor, the Clerk and other appropriate officials to consummate the transactions covered by the agreement.  This ordinance provided it would become effective upon approval of the final agreement.  
Ultimately, on June 3, 1996, a Letter of Intent was sent from the county to NationsWaste.  The letter noted the countys desire to continue negotiating the terms of a possible public-private partnership to operate the old landfill and to develop, construct, and operate a regional solid waste disposal site.  The Letter of Intent read:  This letter will confirm that . . . Chester County, subject to acceptable terms and conditions, intends to enter into an agreement with NationsWaste . . . to provide for long-term solutions to solid waste issues facing Chester County . . . .  The letter then set forth many of the salient terms and continued: 

Assuming that all remaining issues are satisfactorily addressed, the County anticipates that the Agreement will be executed within the next few weeks.  It is understood, however, that until the Agreement is finalized and executed, neither the County nor NationsWaste will be obligated to perform the terms and conditions outlined herein.

After the Letter of Intent was issued, NationsWaste purchased more than 900 acres of land surrounding the landfill site.  Roddey admitted he knew NationsWaste was trying to acquire the land and he told the companys representative, Id been trying to buy 15 acres . . . and I was having a  we were having an awful time with it, but if they could buy it, go do it.  
After the Letter of Intent was sent, Chester County Council voted against the regional landfill agreement with NationsWaste.  Immediately after the countys vote not to enter into an agreement with NationsWaste, Bill Nelson, principal stockholder of NationsWaste, told Michael Locklair, a past county councilman, that he would ruin Carlisle Roddey.  He would never win another election as long as he lived.  
On March 6, 1997, NationsWaste filed a civil action against Chester County and against Roddey, individually, as chairman of the county council, and as county supervisor.  This action asserted causes of action for promissory estoppel, quantum meruit, misfeasance, and ultra vires acts.  Among other things, the lawsuit accused Roddey of acting for personal gain.  The suit received media attention by the local newspaper.  On April 4, 1997, NationsWaste voluntarily dismissed the lawsuit.  
Around the same time, County Councilman James Thomas Funderburk, Jr., a supporter of the NationsWaste proposal, made criminal allegations against Roddey to fellow members of county council, the South Carolina Law Enforcement Division, and the Federal Bureau of Investigation.  Funderburk alleged Roddey had been involved in fraud related to the landfill bidding process.  He also claimed Roddey had been receiving bribes and kickbacks from one of the countys vendors.  Roddey hired an attorney to defend him against these criminal allegations and incurred attorneys fees of $16,861.30.  No charges were ever filed against him.  
Roddey responded by filing a civil action against NationsWaste and Tom Funderburk alleging causes of action for:  1) civil conspiracy, 2) abuse of process, 3) malicious prosecution, 4) defamation or slander per se, 5) unfair trade practices, and 6) tortious interference with prospective economic advantage.  
On the charge of civil conspiracy, the jury found both NationsWaste and Funderburk jointly and severally liable for actual damages of $25,000 and punitive damages of $50,000; found NationsWaste liable for abuse of process for $10,000 in actual damages and $20,000 in punitive damages; found against NationsWaste for Unfair Trade Practices Act violations for $25,000 in actual damages and $50,000 in punitive damages; and, found in NationsWaste favor on the remaining causes of action.[1]  On Roddeys post-trial motion, the trial court struck the punitive damages awarded under the UTPA cause of action, trebled the actual damages awarded for this action, and awarded Roddey $172,099.75 in attorneys fees against NationsWaste under the UTPA.  The court denied the motions filed by NationsWaste and Funderburk.  NationsWaste appeals.
STANDARD OF REVIEW
In considering a directed verdict or a judgment notwithstanding the verdict (JNOV) motion, the appellate court, like the trial court, is required to view the evidence and the inferences that can be drawn therefrom in the light most favorable to the nonmoving party.  Sabb v. South Carolina State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  The motions must be denied when the evidence yields more than one inference or its inference is in doubt.  Id.  Neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence.  Harvey v. Strickland, 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002).
LAW AND DISCUSSION
1.     Unfair trade practices act violations  
NationsWaste argues the trial court erred in denying its motions for directed verdict and JNOV on Roddeys claim for an unfair trade practices act violation.  We agree. 

 Section 39-5-140 of the South Carolina Code provides: 

Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages.

S.C. Code Ann. § 39-5-140 (1985).
We question whether Roddey was in fact the appropriate person to bring a claim for violation of the UTPA against NationsWaste.  However, as we find Roddeys claim fails on other grounds, we need not address this issue.    
Section 39-5-140 only protects a person who suffers any ascertainable loss of money or property, real or personal.  Roddey alleged NationsWaste committed an unfair trade practice against him by bringing an unfounded lawsuit.  However, as the lawsuit was dismissed before Roddey obtained an attorney and he incurred no legal fees, he did not suffer an ascertainable loss as a result of the lawsuit.   
Instead, Roddey relies on the attorney fees he paid to defend himself against the criminal investigation as the ascertainable loss that supports this cause of action.  The criminal investigation, however, was based on allegations made by Funderburk.  Although there is evidence that NationsWaste conspired with Funderburk to ruin Roddey and Funderburk made the allegations in furtherance of that conspiracy, as discussed below, there is no evidence in the record that NationsWaste or any of its employees or agents made any defamatory statements against Roddey as an unfair method of competition in the conduct of any trade or commerce as prohibited by the UTPA.[2]  See S.C. Code Ann. § 39-5-20(a) (1985) (Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.).  As Roddey failed to present any evidence that he suffered an ascertainable loss, his claim for violation of the UTPA must fail as a matter of law.  
2.     Abuse of Process 
NationsWaste argues there was insufficient evidence to support a finding of abuse of process.  We agree.
The tort of abuse of process provides a remedy for one damaged by anothers perversion of a legal procedure for a purpose not intended by the procedure. Food Lion v. United Food & Commercial Workers Intl. Union, 351 S.C. 65, 69, 567 S.E.2d 251, 253 (Ct. App. 2002), cert. dismissed (June 10, 2004).  In order to establish a claim for abuse of process, the plaintiff must prove two essential elements:  1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the conduct of the proceeding.  Id.  at 71, 567 S.E.2d at 253.  An allegation of an ulterior purpose or bad motive standing alone, is insufficient to assert a claim for abuse of process.  Id.  at 74, 567 S.E.2d at 255.  Thus, to establish a claim for abuse of process, the plaintiff must prove not only that the lawsuit was brought for an ulterior purpose, but that willful acts were taken through which the process was misapplied or abused.  Id. 
Roddey testified he believed the suit was filed to embarrass him and bring the county back to the negotiation table.  Roddey also presented testimony by James Gatson and Henry Strange of NationsWastes use of the threat of litigation to intimidate them.  In addition, Roddey presented testimony through Michael Locklair, a past county councilman, that NationsWastes president, Bill Nelson, had said he would ruin Carlisle Roddey.  
Although Roddey presented evidence of the first element of abuse of process, an ulterior purpose, he failed to establish any willful acts through which NationsWaste misapplied or abused the judicial process.  NationsWaste merely commenced a lawsuit, which it dismissed less than a month later.  As Roddey failed to establish this essential element of the tort, his claim for abuse of process fails as a matter of law.  See Food Lion, 351 S.C. at 74, 567 S.E.2d at 255 (quoting W. Page Keeton et al. Prosser and Keeton on the Law of Torts § 121 at 897 (5th ed. 1984)) ([E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.).  
Furthermore, Roddey failed to establish he suffered any damages due to NationsWaste commencing the lawsuit against him.  As stated above, NationsWaste dismissed the lawsuit before Roddey answered and Roddey did not incur any legal fees in defending the action.  Thus, the trial court erred in denying NationsWastes motions for directed verdict and JNOV on Roddeys claim for abuse of process.   
3.     Civil conspiracy 
NationsWaste next argues the trial court erred in denying its motions for directed verdict and JNOV on Roddeys claim for civil conspiracy.  He asserts Roddeys civil conspiracy claim is impermissible because there is insufficient evidence of an agreement to injure him.  We disagree.
A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff and thus causing special damage.  Peoples Fed. Sav. and Loan Assn of South Carolina v. Res. Planning Corp., 358 S.C. 460, 470, 596 S.E.2d 51, 56-57 (2004).  A conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other circumstances.  Id.  Importantly, a civil conspiracy is an act, which is by its very nature covert and clandestine and usually not susceptible of proof by direct evidence.  Id.  
As stated above, Michael Locklair testified that NationsWastes president, Bill Nelson had declared he would ruin Carlisle Roddey. Even after the negotiations between NationsWaste and Chester County fell through, Nelson stayed in close communications with Funderburk.  In a memorandum dated November 26, 1996 to Funderburk, Nelson wrote, I have enclosed a copy of the litigation actions being recommended to us should we be unable to get folks to see the importance of this project.  NationsWaste subsequently filed its lawsuit against Chester County and Roddey individually.  In the lawsuit, NationsWaste alleged:  

In the alternative, if Defendant Roddey did not act on behalf of Chester County in his failure to negotiate in good faith with NationsWaste and to comply with the requirements of and fulfill the intent of the May 6, 1996 ordinance, Defendant Roddey acted outside the scope of his authority and, upon information and belief, for his personal gain in refusing to pursue in good faith the finalizing of the agreement with
NationsWaste.  

The allegation that Roddey was acting for his personal gain was echoed in Funderburks complaint to SLED about irregularities in the bid proposal for the solid waste services contract for Chester County.  Funderburk also filed a complaint with the Federal Bureau of Investigation that Roddey had received kickbacks from the Countys purchase of cleaning supplies.  Neither investigation resulted in any criminal charges against Roddey.  
Funderburks former wife, Carol Funderburk, testified Nelson and her husband met and or spoke on the telephone nearly every day about Roddey and the landfill.  She stated she overheard them discussing getting rid of Carlisle Roddey.  She also overheard them discussing the lawsuit and Funderburk declaring the lawsuit would hurt Roddey through bad publicity.  She stated Funderburk told her that with NationsWastes money they were able to hire people, like lawyers, and do what they needed to do.  In addition, she stated she overheard her husband make repeated statements that Roddey was a liar and embezzler.  When asked at trial if she believed Funderburk and NationsWaste were working together to get rid of Roddey, she testified, Yes, sir, I do.  
Roddey presented evidence of  Nelsons vow to exact revenge against Roddey.  Carol Funderburks testimony suggests a concerted action between her husband and NationsWaste to exact that revenge.  Because a civil conspiracy is by its nature done secretly and is not susceptible to direct evidence, we believe this circumstantial evidence is sufficient to support the trial courts refusal to grant either a directed verdict or judgment notwithstanding the verdict.  
NationsWaste also argues Roddeys claim for civil conspiracy fails because Roddey impermissibly uses the same facts to support the civil conspiracy and other causes of action and Roddey failed to establish any special damages.  We disagree.  
As a unique feature of the tort of civil conspiracy, an action for civil conspiracy will not lie if a plaintiff has obtained relief through other avenues.  Kuznik v. Bees Ferry Assocs., 342 S.C. 579, 610, 538 S.E.3d 15, 31 (Ct. App. 2000), cert. dismissed (January 1, 2004).  The supreme court explained, Where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.  Todd v. South Carolina Farm Bureau Mut. Ins. Co., 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981) (quoting 15A C.J.S. Conspiracy § 33, at 718).  However, a plaintiff may join as alternate claims as many claims, legal or equitable, as he has against the opposing party, even if the claims are inconsistent.  Harper v. Ethridge, 290 S.C. 112, 118, 348 S.E.2d 374, 377 (Ct. App. 1986); See Rule 8(e)(2), SCRCP (A party may set forth two or more statements of a cause of action or defense alternatively or hypothetically . . . regardless of consistency and whether based on legal or on equitable grounds or on both.).
Roddeys claim for civil conspiracy included evidence of the combined actions of Funderburk and NationsWaste.  His inclusion of similar allegations in his other causes of actions does not make his claim for civil conspiracy fail as a matter of law.  Furthermore, as we have reversed the jurys only other verdicts in Roddeys favor against NationsWaste for abuse of process and violation of the UTPA, Roddeys only relief against NationsWaste is through his claim for civil conspiracy.
Accordingly, we find no error in the trial courts denial of NationsWastes motions for directed verdict and JNOV.  
4.     Damages 
NationsWaste also argues the trial court erred in failing to grant a new trial nisi remittitur because Roddey did not prove any damages.  We disagree.
The trial court alone has the power to grant a new trial nisi when it finds the amount of the verdict to be merely inadequate or excessive.  ONeal v. Bowles, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993).  The denial of a motion for a new trial nisi is within the trial courts discretion and will not be reversed on appeal absent an abuse of discretion.  Id.  On appeal of the denial of a motion for a new trial nisi, this court will reverse only when the verdict is grossly inadequate or excessive requiring the granting of a new trial absolute.  Id.  
When deciding a motion to grant a new trial, the court must look at the testimony and inferences raised in favor of the nonmoving party.  Welch v. Epstein, 342 S.C. 279, 302-03, 536 S.E.2d 408, 420 (Ct. App. 2000).  The trial court must set aside a verdict only when it is shockingly disproportionate to the injuries suffered and thus indicates that passion, caprice, prejudice, or other considerations not reflected by the evidence affected the amount awarded.  Id.  at 302, 536 S.E.2d at 420.  A jurys determination of damages is entitled to substantial deference by this court.  Knoke v. South Carolina Dept. of Parks, Recreation & Tourism, 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996).
Roddey presented evidence that due to the conspiracy between NationsWaste and Funderburk he lost his position as county manager and supervisor and his health suffered.  In addition, after losing his bid for reelection as county manager and supervisor, Roddey sought employment with the Chester Metropolitan Water and Sewer District as a grant writer.  Mike Medlin, the executive director of the water district, testified that Funderburk told him that if Roddey was hired, Funderburk would attack Medlin and the district in the press.  Medlin explained these threats were the primary reason he did not hire Roddey.  Roddey also presented as evidence of his damages the legal fees he incurred defending himself in the criminal investigation that was commenced based on Funderburks allegations.  It was within the province of the jury to find that Funderburk made these threats to Medlin and allegations of criminal conduct in furtherance of his conspiracy with NationsWaste to ruin Roddey.  We find the evidence supports the jurys award of $25,000 in actual damages.  Accordingly, we hold the trial court did not abuse its discretion in refusing to grant a new trial nisi remittitur.  
NationsWaste also argues the trial court erred in failing to strike the jurys award of punitive damages.  We disagree.
In order to recover punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendants conduct was willful, wanton, or in reckless disregard of the plaintiffs rights.  S.C. Code Ann. § 15-33-135 (2005); Taylor v. Medenica, 324 S.C. 200, 221, 479 S.E.2d 35, 46 (1996).  The trial court should conduct a post-trial review of punitive damages to determine whether the award of punitive damages was proper.  Gamble v. Stevenson, 305 S.C. 104, 111, 406 S.E.2d 350, 354 (1991). In conducting such a review the trial court may consider the following factors:

(1) defendants degree of culpability; (2) duration of the conduct; 3) defendants awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendants ability to pay; and finally, (8) . . .  other factors deemed appropriate.

Gamble, 305 S.C. at 111-12, 406 S.E.2d at 354.  The trial court is not required to make findings of fact for each factor to uphold a punitive damage award.  McGee v. Bruce Hosp. Sys., 321 S.C. 340, 468 S.E.2d 633 (1996).  Welch v. Epstein, 342 S.C. at 306, 536 S.E.2d at 422.  The trial judge has considerable discretion regarding the amount of damages both actual or punitive awarded.  Id.  at 305, 536 S.E.2d at 421.
As stated above, we find the evidence supports the jurys finding of a civil conspiracy between NationsWaste and Funderburk to ruin Roddey.  We hold Roddey established by clear and convincing evidence that NationsWastes acts in engaging in this conspiracy were willful, wanton, or in reckless disregard of Roddeys rights.  Considering the Gamble factors, we find no error in the trial courts refusal to strike the jurys award of $50,000 in punitive damages.  
5.  Inadmissible testimony
NationsWaste argues the trial court erred by allowing in the testimony of Carol Funderburk.   We disagree.
NationsWaste asserts the court erred in admitting this testimony because Funderburk was basing her testimony on a telephone conversation between her husband and Nelson, president of NationsWaste, and she could not hear Nelsons side of the conversation.  NationsWastes argument is contained in three paragraphs that contain no citation to law and little explanation on why this evidence would be inadmissible.  Therefore, this issue is deemed abandoned on appeal, because it is argued only in a short, conclusory statement without supporting authority.  See Fields v. Melrose Ltd. Partnership, 312 S.C. 102, 106 n.3, 439 S.E.2d 283, 285 n.3 (Ct. App. 1993).  
6.      Motions for mistrial 
NationsWaste alleges the court erred by making prejudicial comments and not granting the subsequent motions for a mistrial.  We disagree.
A judge has the inherent authority and responsibility to maintain order in the courtroom.  State v. Jones, 325 S.C. 310, 317-18, 479 S.E.2d 517, 521 (Ct. App. 1996).  A trial court has wide discretion in granting or denying a mistrial, and the trial courts discretion will not be disturbed absent an abuse of discretion or the commission of a legal error resulting in prejudice to the moving party.  Williams v. Riedman, 339 S.C. 251, 283, 529 S.E.2d 28, 44-45 (Ct. App. 2000).
The testimony of Tom Funderburk was filled with difficulties.  Repeatedly, Funderburk would continue to talk after an objection was made but before the court had made a ruling.  Finally, the court informed him that when an objection was raised he could not speak.  Funderburk also repeatedly testified as to hearsay evidence, prompting the court to instruct him on hearsay.  In addition, when the trial stopped for the day, the court allowed Funderburks counsel to speak to his client before court returned to explain what testimony was and was not permissible.  
The next day, Funderburk continued offering testimony that the court ruled was hearsay.  Funderburk also continued to interrupt the court while it considered objections.  In one instance, Funderburk disregarded the courts decision that testimony was hearsay and replied, It came out through the F.B.I. anyway.  When the court instructed the jury to disregard the comments, Funderburk blurted out, Let me say this.  Its been testified in this courtroom this week.  The court interrupted the witness and stated, 

No, sir, Mr. Funderburk.  You dont tell anything unless you . . . are responding to a question. . . .This is not a county council meeting.  Youre not talking to the press.  Youre not in the principals office.  Youre in a court of law. . . .  Youre going to follow our rules.  Is there any part of that you dont understand?

The court then ordered a ten-minute recess.  During the time the jury was out, NationsWaste moved for a mistrial.  The court expressed its frustration at having its directions repeatedly disregarded, apologized to Funderburk, and then denied the motion.  When the jury returned, the court offered a curative instruction, advising the jury they were the sole fact finders and telling them he had apologized to Funderburk.  
We find the trial courts curative instruction sufficiently addressed the comments it had made.  Based on our examination of the record, we hold the trial court did not abuse its discretion in denying NationsWastes motion for mistrial.  
NationsWastes other motion for mistrial involved the rebuttal testimony of Lowell Spires.  Spires worked for the landfill company that has a contract with Chester County.  After the defense stated it had no further questions for him, Spires stated, I want somebody to ask me about Clay Young one more time.  When the court told Spires he would not be able to testify further, Spires stated:  Ill honor the courts request.  I sure would love to tell the jury what the real deal about Mr. Young was though.  The court responded: I kind of sort of think they got the real deal on Mr. Young, but thank you very much, Mr. Spires.  NationsWaste moved for a mistrial because the courts comment cast a real question over the credibility of Mr. Young given the context within . . . which the exchange took place.  
The court denied the motion and explained the comment was simply an affirmation of Mr. Youngs testimony and that [the jury] had heard it.  They had heard his testimony and they had their opportunity to assess and apprise him and that I felt that they already understood the real deal on Mr. Young.  
Considering our limited standard of review and inability to judge the trial courts tone in its remarks, we find no abuse of discretion in the courts denial of NationsWastes motion for mistrial.  
7.     Attorneys testimony 
Finally, NationsWaste argues the trial court erred in refusing to admit testimony from its attorney regarding the basis for the March 1997 civil action.  We find no reversible error.  
The trial court ruled that NationsWastes attorney could not offer any opinion testimony because she was not designated as an expert witness.  She was, however, allowed to testify as to factual basis of the lawsuit.  She testified that NationsWaste purchased property in order to close the old county landfill properly and establish the Catawba Regional Landfill that it believed the county ordinance authorized it to do.  After Chester County failed to enter into the agreement with NationsWaste, it was left with the contaminated land.   She stated NationsWaste requested she file the lawsuit because it had no other recourse to recoup the money it had spent on acquiring the land and on the project.  She stated NationsWaste only wanted to be made whole and she was only trying to accomplish this wish by drafting the lawsuit.  She denied NationsWaste told her of any reason for filing the lawsuit other than to recover the money spent for the property and on the project.  She testified she named Roddey individually as an alternative theory of liability in the event Chester County argued that it had not authorized him to enter into the agreement with NationsWaste.  She explained that in alleging Roddey was acting for personal gain in refusing to finalize the agreement, she was referring to Roddeys shifting position for his political reelection.  She denied that the lawsuit was an attempt to intimidate Roddey and stated the lawsuit was meant to get NationsWastes money back.  
The attorney testified she relied on the letter of intent in making her decision to file the suit against Chester County and Roddey individually.  She asseverated that in filing the lawsuit, she complied with Rule 11, SCRCP, which she explained required her to assure herself there was a meritorious basis for the claim.   
Considering the attorneys entire testimony, we find she was in fact able to testify about the factual basis of the lawsuit, including her own view as to the merits of the suit.  Thus, we conclude NationsWaste was not prejudiced by the trial courts exclusion of evidence.  Accordingly, we find no reversible error in the trial courts rulings concerning her testimony.  See Otis Elevator, Inc. v. Hardin Const. Co. Group, 316 S.C. 292, 299, 450 S.E.2d 41, 45 (1994) (absent a showing of prejudice, an appellate court will not reverse for an alleged error in the exclusion of evidence). 
CONCLUSION
The verdict against NationsWaste on Roddeys UTPA cause of action and the trial courts award of treble damages and attorneys fees pursuant to the Act are REVERSED.  The verdict against NationsWaste on Roddeys claim for abuse of process is also REVERSED.  The verdict and damages awarded on Roddeys claim for civil conspiracy are AFFIRMED.[3]  
 AFFIRMED IN PART AND REVERSED IN PART.  
GOOLSBY, HUFF, and STILWELL, JJ., concur.  

[1] The jury also found in Roddeys favor against Funderburk on the claims of malicious prosecution awarding $16,861.30 in damages, defamation/slander per se, awarding $25,000 in damages, tortuous interference with prospective economic advantage, awarding $12,000.  Funderburk is not a party to this appeal.  
[2] The jury, in fact, found in favor of NationsWaste in Roddeys claim for defamation against the company.  
[3] We need not address NationsWastes remaining issues.