**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-2258**

---

SAPPHIRE DEVELOPMENT, LLC,

Plaintiff - Appellant,

versus

SPAN USA INCORPORATED; RIPLEY LIGHT MARINA
INCORPORATED; FRED COLLINS,

Defendants - Appellees.

---

**No. 04-1092**

---

SAPPHIRE DEVELOPMENT, LLC,

Plaintiff - Appellee,

versus

SPAN USA INCORPORATED; RIPLEY LIGHT MARINA;
FRED COLLINS,

Defendants - Appellants.

---

Appeals from the United States District Court for the District of
South Carolina, at Charleston.  David C. Norton, District Judge.
(CA-00-3756-2-18)

---

Submitted:  December 23, 2004          Decided:  February 1, 2005

---

Before NIEMEYER and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

Clayton B. McCullough, PRATT-THOMAS, EPTING & WALKER, P.A., Charleston, South Carolina, for Appellant/Cross-appellee. Desa Ballard, LAW OFFICES OF DESA BALLARD, West Columbia, South Carolina, for Appellees/Cross-appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Sapphire Development, LLC ("Sapphire") appeals the district court's judgment in a civil case filed by Sapphire relative to a contract dispute with Span USA, Inc., Ripley Light Marina, Inc., and Fred Collins (collectively "Collins"), in which the district court granted partial summary judgment in favor of Collins (Appeal No. 03-2258). Collins appeals the district court's judgment and order dismissing its counterclaims against Sapphire pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act, for abuse of process, and for slander of title (Appeal No. 04-1092). For the reasons set forth below, we affirm the district court's orders in both appeals.

Sapphire entered into a contract with Collins to purchase, for the sum of ten million dollars, certain real property in Charleston County known as Ripley Light Marina for commercial development. The terms of the contract required Collins, at its "sole cost and expense," to deliver a copy of "all Phase I or II Environmental Studies in Seller's possession, if any" to Sapphire. Collins retained an environmental engineer with Albrecht Engineering ("Albrecht") to conduct an environmental assessment, to include the analysis of dioxins and furans, which are hazardous substances of significant concern to environmental regulators, which substances had been a problem in the area in the past. Sapphire had been advised by the Corps of Engineers that the

- 3 -

underlying Quality Control/Quality Assurance ("QC/QA") data that was part of Albrecht's Phase I environmental study was required to obtain the necessary state and federal permits to dredge the marina basin in preparation for the development of the property as condominiums. Sapphire requested the test results both orally and in writing. Albrecht conducted the Phase I analysis, but because Collins did not pay Albrecht for its reports, Albrecht refused to turn over the underlying QC/QA data until it was paid for its work. Albrecht was unable to release the test results to, or accept payment offered by, Sapphire for its work without running afoul of its professional responsibilities. Collins delivered to Sapphire all reports in its possession.

While the contract provided for an October 31, 2000 closing date, Sapphire did not close by October 31, 2000, taking the position that the QC/QA documentation was material to its ability to close on the property, because issuance of the appropriate dredging permits were dependent on the QC/QA data results. Sapphire therefore took the position that as a result of Collins' failure to turn over the environmental data, Sapphire could not close on the subject property. Collins took the position that it did not "possess" the data at issue, therefore, pursuant to the Agreement, the failure to turn the data over did not excuse Sapphire from timely closing on the Ripley Light Marina project.

Based on this dispute, Sapphire filed the Complaint on November 29, 2000, against Collins seeking declaratory relief and specific performance, including an order requiring Collins to turn over the analytical data. Sapphire also filed a lis pendens on the property. Collins counterclaimed for abuse of process and slander of title, and sought sanctions pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §§ 15-36-10 to -50 (Supp. 2003).

Collins subsequently moved for partial summary judgment and the matter was heard on August 8, 2001.[1] On September 20, 2001, the district court granted Collins' motion for partial summary judgment, ordered that Collins retain the $100,000 in earnest money, plus interest, as liquidated damages, and ordered Sapphire to remove the lis pendens filed against the property.

Collins subsequently tried its counterclaims before the district court. Sapphire moved for judgment to be entered on all three counterclaims. The court granted Sapphire's motion as to Collins' slander of title claim following the presentation of Collins' evidence. At the conclusion of the two-day bench trial, the district judge entered judgment in favor of Sapphire on both Collins' statutory claim and its claim for abuse of process.

---

[1]Several days following the hearing on the motion for summary judgment Collins ultimately filed, Collins paid Albrecht's bill, received delivery of the QC/QA data, and in turn delivered it to Sapphire. Sapphire then asked for a reasonable amount of time to close, which request was refused by Collins.

1. Appeal No. 03-2258.

In Appeal No. 03-2258, Sapphire challenges the district court's adverse grant of partial summary judgment. The prayer for relief reflects that the basis for Sapphire's suit was to obtain an order requiring Collins to turn over the environmental data it allegedly was withholding and to obtain an extension of the time for closing until Sapphire received the requested data from Collins and until the regulators had sufficient time to act on the permit applications, so Sapphire could seek specific performance of the contract.

In granting summary judgment in favor of Collins on Sapphire's cause of action for specific performance, the district court concluded that Sapphire had breached the contract by not closing the transaction on the date set forth in the contract, or on a reasonable date thereafter. The district court's analysis focused on whether Collins had "possession" of the environmental studies that had been prepared, but for which it had not paid, such that it had violated the contract by not providing to Sapphire "[e]nvironmental [s]tudies in [its] possession, if any." The district court rejected Sapphire's contention that the Albrecht engineer was Collins' agent, concluding that, absent the payment by Collins to Albrecht, Collins could not take possession of the documents or exert any dominance over them and thus did not have constructive possession of the documents.

Summary judgment is appropriate when there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party, based upon review of all pleadings, depositions, affidavits, and other documents submitted by the parties. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc). "In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (citing Anderson, 477 U.S. at 255). The non-movant is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts [ ] resolved favorably to him." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (quoting Fed. R. Civ. P. 56(c)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). We review de novo a district court's grant of summary judgment. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

Sapphire asserts that the "clear and unambiguous terms of the Agreement [between the parties] state that Collins is to deliver and make available to Sapphire the Phase I environmental study at Collins' sole cost and expense" and that Collins refused to pay for the study "in direct violation of the Agreement." While it admits that it is undisputed that Collins did not actually

- 7 -

possess the data because it refused to pay Albrecht's bill, Sapphire asserts that Collins had constructive possession of the pertinent data,[2] and that its refusal to pay the bill and turn over the data precluded the district court's grant of partial summary judgment.

As noted by the district court, the threshold question in this case is whether Collins had "possession" of the data. We find there are two ways to look at this issue, and under either construction, the district court correctly held against Sapphire. First, under the clear, unambiguous language of the contract, Collins did not have actual possession of the data such that it was required to turn it over to Sapphire. Second, to the extent that Sapphire is contending that the contract is ambiguous such that the term "possession" should include constructive as well as actual possession of the data, i.e., to the extent that the contract is subject to more than one reasonable interpretation, the contract must be construed strictly against Sapphire, as it acknowledged authorship of the pertinent paragraph of the contract. See, e.g., Myrtle Beach Lumber Co. v. Willoughby, 274 S.E.2d 423, 426 (S.C. 1981). Here, because Collins had not paid Albrecht, and as a result, Albrecht refused to release the documents, Collins could

---

[2]Under South Carolina law, a person has constructive possession over an object if he or she has "dominion and control, or the right to exercise dominion and control. . . ." State v. Jennings, 515 S.E.2d 107, 109 (S.C. Ct. App. 1999).

not take possession or control of the documents, nor did it have any legal right to do so, without first paying the money it owed. Once Collins paid the money owed to Albrecht, it then, and only then, had constructive possession of the data until such time as it actually possessed the data upon delivery. Stated differently, constructive possession of the documents in this case attached only when the bill was paid and continued until Collins had the data in hand.

This analysis does not change upon consideration of Sapphire's assertion that the Albrecht engineer was an agent of Collins, given that Sapphire presented no evidence tending to establish that Collins appointed Albrecht as their representative or that the engineer had any authority legally to bind Collins on any issue with third parties. See, e.g., Peeples v. Orkin Exterminating Co., 135 S.E.2d 845, 848 (S.C. 1964). Rather, the engineer had a contractual arrangement with Collins, whereby the engineer would perform necessary studies to prepare an environmental report and Collins would pay for the report. The authority of the engineer to act on Collins' behalf was limited to performing the service requested and Albrecht had no authority to bind Collins with third parties. Because the existence of an agency relationship between the Albrecht engineer and Collins was not clearly established by the facts, Fraiser v. Palmetto Homes,

<u>Inc.</u>, 473 S.E.2d 865, 867 (S.C. Ct. App. 1996), we find the district court properly rejected Sapphire's claim as to agency.

Sapphire's assertion of error in the district court's partial summary judgment ruling on this issue on the basis that "Collins should not be allowed to circumvent his contractual responsibilities to Sapphire simply by breaching his agreement with Albrecht [i.e. refusing to pay for the studies undertaken at his request]" is dependent upon parole evidence to support the necessary argument that Collins was in fact contractually obligated to request the studies and then turn over the results prior to closing because nothing in the black-letter of the contract obligates Collins to do anything other than to turn over studies that actually were in its possession "if any."[3]  Indeed, Sapphire's argument of this issue, based upon the premise that a contract must be "interpreted in light of the situation of the parties, as well as the purposes they had in view at the time the contract was made" speaks directly to parole evidence.  The district court, however, properly held that under the parole evidence rule, extrinsic evidence may not be used to vary the terms of the contract. (J.A. 226).  <u>Gilliland v. Elmwood Props.</u>, 391 S.E.2d 577, 581 (S.C. 1990).  We find that the district court correctly rejected Sapphire's attempt to rely upon evidence of discussions and

---

[3]In fact, as the district court noted, the explicit term in the contract "if any" contemplates that Collins may not have any environmental studies in its possession.

- 10 -

writings outside the four corners of the contract between the parties that would change the actual obligations of the parties under the terms of the written contract. Moreover, Sapphire's attempts to argue in the alternative that parole evidence is unnecessary because the contract itself states that Collins is to deliver the studies at issue at its "sole cost and expense" fail because the contract does not obligate Collins to deliver these particular studies because it did not have the studies until after the summary judgment hearing.

Moreover, if, as Sapphire asserts throughout its brief, the specific environmental studies performed by Albrecht were so material to the deal, Sapphire should have included provisions in the written contract that obligated Collins: (1) to have the environmental studies conducted; (2) to pay for them; and (3) to turn over the results to Sapphire prior to closing. However, the contract did not include such terms and the district court correctly refused to allow Sapphire to vary the terms of the actual contract, as written and agreed to by the parties, in order to provide to Sapphire greater benefit. We affirm the district court's refusal to rewrite the terms of this contract for Sapphire's benefit.

Given the propriety of the district court's determination that Collins fulfilled its obligations under the contract because its did not possess the Phase I environmental studies at issue and

therefore had no obligation to turn over those documents, Sapphire's refusal to close on the designated day, or on a reasonable day thereafter, was a material breach of the contract. Hence, we affirm as proper the district court's grant of partial summary judgment to Collins, along with its orders that Collins retain the $100,000 in earnest money and Sapphire remove the lis pendens from the subject property.

    2.    Appeal No. 04-1092.

The first issue raised in Appeal No. 04-1092 is Collins' challenge to the district court's adverse determination relative to its counterclaim seeking statutory damages under the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §§ 15-36-10 to -50 (Supp. 2003).[4]  The basis for this claim is Sapphire's

---

[4]To prevail on this cause of action, Collins was required to prove that:

(1)   [T]he other party has procured, initiated, continued, or defended the civil proceedings against him;
(2)   the proceedings were terminated in his favor;
(3)   the primary purpose for which the proceedings were procured, initiated, continued, or defended was not that of securing the proper discovery, joinder of parties, or adjudication of the civil proceedings;
(4)   the aggrieved person has incurred attorney's fees and court costs; and
(5)   the amount of the fees and costs set forth in item (4).

S.C. Code Ann. § 15-36-40.

In addition, pursuant to S.C. Code § 15-36-20,

Any person who takes part in the procurement, initiation, continuation, or defense of civil proceedings must be

- 12 -

alleged bad faith in filing the lawsuit in district court. Collins asserts that the lawsuit was filed under pretexual grounds. Specifically, it claims Sapphire filed the suit to force Collins to pay the bill and obtain the environmental data Sapphire needed to finance its purchase of the property.

Stuart Longman, a member of Sapphire, testified at trial that Sapphire needed the QC/QA data to obtain the necessary dredging permits and to obtain financing. Jack Walker, formerly employed by the U.S. Army Corps of Engineers, testified that the Corps required the QC/QA data before it would issue a dredging permit. David Swanson, an experienced real estate attorney, testified that the QC/QA data generally is required by lending institutions before issuing a loan on this type of project. Longman testified that he sought the advice of Marvin Infinger and David Swanson, both attorneys with the law firm of Haynsworth, Sinkler and Boyd, P.A., before proceeding with the lawsuit. Both

---

considered to have acted to secure a proper purpose as stated in item (1) of Section 15-36-10 if he reasonably believes in the existence of the facts upon which his claim is based and

(1) <u>reasonably believes that</u> under those facts <u>his claim may be valid under the existing or developing law; or</u>
(2) <u>relies upon the advice of counsel</u>, sought in good faith and given after full disclosure of all facts within his knowledge and information which may be relevant to the cause of action; . . .

S.C. Code § 15-36-20 (emphasis added).

Infinger and Swanson testified that they advised Longman to proceed with the lawsuit and that the lawsuit was well founded in the law.

The district court found this testimony credible, concluded that Collins failed to prove that the "primary purpose of the lawsuit was not the adjudication of a valid legal proceeding," and further held that Sapphire reasonably relied upon the advice of counsel prior to filing the lawsuit. We find that the district court's decision to reject Collins' statutory claim was proper.

First, we will not review a district court's credibility findings. See, e.g., Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C., 801 F.2d 719, 725 (4th Cir. 1986). Second, Collins put forth no evidence to dispute that Sapphire reasonably believed that his claim was valid or that Sapphire's reliance upon the advice of counsel was not sought in good faith and after full disclosure of all facts and information relevant to the cause of action sued upon.[5]  We find that the district court's decision regarding

---

[5]Collins contends that the advice of counsel was not rendered upon a full factual disclosure by Sapphire. (Appellees/Cross-Appellants' Brief, at 21).  In particular, Collins relies on Infinger's testimony that, at the time the lawsuit was filed, he did not know that:  (1) Sapphire did not have the funds to purchase Collins' property (J.A. 304-05); (2) Sapphire was pre-selling the units on Collins' property and that the contract documents allowed the purchase money to be used to purchase the subject property (J.A. 309); (3) the $100,000 earnest money check had bounced (J.A. 307); and (4) the earnest money had not been placed in an interest-bearing account as required by the Contract (J.A. 307-08). (Id.). However, there is no evidence on this record that the advice of counsel would have been any different had Sapphire informed counsel of the additional facts Collins set forth in its brief.

Collins' right to recover under the Frivolous Civil Proceedings Act was not clearly erroneous, <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 574 (1985), and therefore affirm that decision.

The next issue raised in Appeal No. 04-1092 is Collins' challenge to the district court's adverse determination relative to its abuse of process counterclaim. Collins asserts that the district court applied the wrong standard in its determination that it "was not persuaded that the <u>sole purpose</u> of the underlying litigation was [Sapphire's] simple desire to postpone the closing date on the subject property." Citing <u>Huggins v. Winn-Dixie Greenville, Inc.</u>, 153 S.E.2d 693, 694 (S.C. 1967), Collins contends that the correct standard requires only an "ulterior purpose." It asserts that Sapphire filed the lawsuit against it with the ulterior purpose of delaying the closing date on the property so it could gain time to pre-sell units and accumulate enough money to close on the contract with Collins, close on a related tract of property, and obtain government approvals.

To establish a viable cause of action for abuse of process, Collins must prove: (1) an ulterior purpose; and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. <u>Huggins</u>, 153 S.E.2d at 694. As the district court noted in its opinion, an allegation of an ulterior purpose or bad motive, without evidence that willful acts were taken through which the process was misapplied or abused, is insufficient. <u>Food</u>

- 15 -

Lion, Inc. v. United Food & Commercial Workers Intern. Union, 567 S.E.2d 251, 255 (S.C. Ct. App. 2002). The willful act element requires: "(1) a 'willful' or overt act; (2) 'in the use of the process'; (3) that is improper because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective." Food Lion, 567 S.E.2d at 254 (citations omitted).

The district court considered the issue raised by Collins and, based upon the evidence before it, determined that Collins failed to prove that Sapphire filed the suit for any purpose other then to obtain the environmental data it reasonably believed was needed to secure financing and be secure in the business venture.[6] The district court based its decision on the testimony of Attorney Swanson and Longman, who testified that the environmental condition of the property was an essential consideration as to whether the development would be feasible and that the QC/QA data was necessary for financing of the project, as well as the fact that Longman sought the advice of Sapphire's attorney, who advised him that he had a legitimate legal controversy and that he should file a complaint based on the dispute with Collins over production of the environmental data. The pertinent issue here is the purpose behind the lawsuit, not the result. As the district court noted, although

_____

[6]The court took note of the fact that while an individual in the Corps verbally assured Sapphire that the data would not be necessary in this particular instance, Sapphire had nothing in writing from the government waiving the requirement to produce QC/QA data in the permit application process. (J.A. 346 n.1).

- 16 -

the lawsuit resulted in some collateral advantage to Sapphire with regard to the closing date, the evidence nonetheless supports the conclusion that the suit was initiated for a legitimate purpose.

We find that Collins' assertion that the district court applied an incorrect legal standard in considering its claim is without merit.  The district court set forth the proper legal standard, and determined that no "willful acts" were taken by Sapphire "through which the legal process was misapplied or abused."  Given the evidence presented at trial, we  find that the district court did not clearly err in determining that Sapphire did not use the lawsuit to obtain a collateral advantage in purchasing the subject property, but rather to obtain information it reasonably believed to be necessary.  Anderson, 470 U.S. at 574. Hence, we uphold the district court's decision denying Collins' abuse of process claim.

The final issue raised in Appeal No. 04-1092 is Collins' challenge to the district court's adverse determination relative to its slander of title counterclaim.  We review de novo the district court's grant of a directed verdict on the issue of slander of title.  Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985).  To maintain an action for slander of title, Collins must establish:

> '(1) the publication of (2) a false statement
> (3) derogatory to [Collins'] title (4) with
> malice (5) causing special damages (6) as a

result of diminished value of the property in the eyes of third parties.'

Huff v. Jennings, 459 S.E.2d 886, 889 (S.C. Ct. App. 1995) (citing TXO Prod. Corp. v. Alliance Resources Corp., 419 S.E.2d 870 (W. Va. 1992)). Collins challenges the district court's dismissal of its slander of title claim, asserting that the lis pendens filed by Sapphire on the subject property, and Sapphire's marketing and pre-selling of units to be built on the property at issue, which property it did not own, were done with reckless disregard for Collins' rights and that these actions resulted in the diminished value of the property in the eyes of third parties.

First, the law in South Carolina is clear that the filing of a lis pendens cannot form the basis of an action for slander of title. Pond Place Partners, Inc. v. Poole, 567 S.E.2d 881, 892 (S.C. Ct. App. 2002). Second, we find that the district court's entry of judgment against Collins on its slander of title allegations based upon Sapphire's other actions as described above was proper because Collins failed to produce evidence at trial that the value of the property at issue was in any way diminished. While Collins contends that none of the collateral inquiries since the filing of the lawsuit and the pre-sale by Sapphire of condominium units resulted in a sale of the subject property, this evidence does not establish diminution of the value of the property. Moreover, to the extent Collins is relying on the fact of protracted litigation to support its claim, the fact that the

- 18 -

litigation at issue was prolonged based upon Collins' pursuit of counterclaims against Sapphire flies in the face of any assertion that it was solely the actions of Sapphire that resulted in Collins' inability to sell the subject property, rather than its own actions.

Accordingly, we affirm the district court's grant of partial summary judgment against Sapphire in Appeal No. 03-2258, and further affirm the district court's rejection of Collins' counterclaims in Appeal No. 04-1092. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED